FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JAN 10 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHIGOZIE M. ENOCH,       *

    Plaintiff                 *

v.                           *       CIVIL NO. JKB-12-3701

ADVANCED BIOSCIENCE       *
LABORATORIES, INC.,
                              *
    Defendant
                              *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Chigozie M. Enoch ("Plaintiff") brought this claim against Advanced Bioscience Laboratories, Inc. ("Defendant"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. *See* 42 U.S.C. §§ 2000e *et seq*. Now pending before the Court is Defendant's motion for summary judgment (ECF No. 23) and Plaintiff's amended opposition and cross-motion for summary judgment (ECF No. 27).[1] The Court has considered the motions as well as Defendant's opposition and reply (ECF No. 32) and Plaintiff's reply (ECF No. 34).[2] No hearing is required. Local Rule 105.6 (D. Md. 2011). Defendant's motion for summary judgment will be GRANTED, and Plaintiff's amended opposition and cross-motion for summary judgment will be DENIED.

---

[1] It is unclear from Plaintiff's filing whether his intent was to file a response in opposition or a cross-motion for summary judgment. However, because Plaintiff has requested the relief of summary judgment in his favor, the Court will treat his motion as a cross-motion for summary judgment.

[2] Plaintiff's reply on his cross-motion for summary judgment was erroneously treated as an unpermitted surreply and rejected for filing. The Clerk shall be directed to docket Plaintiff's reply on his cross-motion for summary judgment (ECF No. 33-1) as ECF No. 34.

## I. *Factual Background*[3]

On October 12, 2009, Plaintiff was hired by Defendant, a contract-based research and manufacturing organization, to work as a protein purification specialist. (Def.'s Mot. Dismiss 1, ECF No. 23-1.) As of January 2008, Defendant maintained an "Electronic Mail/Internet Policy" "strictly prohibit[ing]" employees from using Defendant's email or Internet system for non-job-related purposes. (*Id.* Ex. 2, Employee Handbook 12, ECF No. 23-2.) Violation of the Electronic Mail/Internet Policy was grounds for disciplinary action, up to and including termination. (*Id.*) On or about March 15, 2012, Defendant's IT Director, Anton Vanas, sent an email to Defendant's employees directing them to clean their computers' "P" drives. (Compl. ¶ 6, ECF No. 1.) On March 16, 2012, Plaintiff attempted to clean his "P" drive and transfer documents contained therein to his personal email account. Included among these documents was a letter from Plaintiff's former employer, Becton Dickinson & Co. ("Becton Dickinson"), to the Equal Employment Opportunity Commission ("EEOC"), responding to a discrimination charge Plaintiff filed against Becton Dickinson in 2009. (*Id.*, Ex. 8, ECF No. 1-9.) When Plaintiff attempted to email the EEOC response letter, he received an error message indicating that the attached document and message failed to be delivered. (*Id.*) Plaintiff asserts that because of this failure, Defendant's Management Information Systems ("MIS") department intercepted and possessed the email. (Compl. ¶ 6.) Following Plaintiff's failed email attempt, Plaintiff noticed that his supervisor, Umme Habiba, made general comments at weekly

---

[3] When considering a motion for summary judgment, the facts and the inferences to be drawn therefrom are taken in the light most favorable to the party opposing the motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Because the parties have filed cross-motions for summary judgment, the Court must consider each motion separately on its own merits "'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Phillip Morris Inc. v. Harshbarger*, 122 F.3d 228, 230 (1st Cir. 1996)). Having considered the motions, the Court is of the opinion that Defendant is entitled to judgment as a matter of law. Accordingly, the facts and inferences to be drawn therefrom are taken in the light most favorable to the party opposing that motion, Plaintiff.

2

department meetings concerning racial and national origin employment complaints. (Pl.'s Am. Cross-Mot. Summ. J., Ex. 3, Aff. Enoch ¶ 7, ECF No. 27-2.)

On March 20, 2012, Defendant implemented a revised IT policy for proper usage of computer systems and required all employees in Plaintiff's department, including Plaintiff, to sign the policy. (Pl.'s Am. Cross-Mot. Summ. J., Ex. 2, Training Form, ECF No. 27-2.) Plaintiff signed the revised policy. (*Id.*)

On June 13, 2012, a purification team, which included Plaintiff, Dr. Claire Zhang, and Treavor O'Neal, was assigned to work in a room that required all occupants to "fully gown" before entering. (Def.'s Mot. Summ. J., Ex. 5, Employee Warning Notice, ECF No. 23-2.) Upon arriving at the room, Plaintiff observed Dr. Zhang already inside the room without a full gown and then entered himself without fully gowning. (*Id.*, Ex. 4, Dep. Enoch 102:3-103:6; 105:3-19, Sept. 5, 2013, ECF No. 23-2.) Plaintiff alleges he was followed by Treavor O'Neal, who likewise did not fully gown. (Compl., Continuation 3, ECF No 1.) The following day, June 14, 2012, Plaintiff's supervisor, Ms. Habiba, sanctioned Plaintiff for violating the protocol requiring Plaintiff to fully gown. (Def.'s Mot. Summ. J., Ex. 5, Employee Warning Notice.) Defendant issued Plaintiff a written employee warning notice and placed Plaintiff on probation for a period of three months, to end on September 14, 2012. (*Id.*) Plaintiff alleges that neither Dr. Zhang nor Treavor O'Neal was sanctioned. (Compl., Continuation 3.) On July 20, 2012, while still on probation, Plaintiff prepared several documents and log books for Ms. Habiba regarding a specific project. Ms. Habiba discovered numerous errors in the materials from Plaintiff, including use of expired conductivity standards, untimely completion of the column cleaning log book, failure to properly calibrate a balance on two separate occasions, and improper recording of column cleaning dates in the batch record. (Def.'s Mot. Summ. J., Ex. 6,

Employee Warning Notice, ECF No. 23-2.) As a result of these errors, on July 23, 2012, Ms. Habiba signed a second employee warning notice and recommended to her superiors that Plaintiff be terminated. (*Id.*, Ex. 1, Aff. Habiba ¶ 4, ECF No. 23-2.)

On the morning of July 24, 2012, Beth Tebeau, Defendant's Director of Manufacturing, reviewed Ms. Habiba's recommendation of termination, endorsed it, and sought approval from Defendant's President and CEO, Thomas Van Cott. (*Id.*, Ex. 7, Aff. Tebeau ¶ 5, ECF No. 23-2.) Ms. Tebeau contacted Mr. Van Cott, stating that she planned to terminate Plaintiff and had coordinated with Defendant's Director of Human Resources, Larry Rocha, who agreed that sufficient information and documentation existed to warrant Plaintiff's termination. (*Id.*, Ex. 8, correspondence, ECF No. 23-2.) Mr. Van Cott consented to Plaintiff's termination. (*Id.*)

Also on the morning of July 24, 2012, but subsequent to Defendant's correspondence and decision to terminate Plaintiff, Plaintiff sent an official complaint to Larry Rocha, stating that he felt he was treated differently from others by his supervisor, Ms. Habiba, and was punished for what others did. (Compl., Ex. 3, ECF No. 1-4.) Mr. Rocha responded by stating "[t]his discussion will take place at 10:15 today." (*Id.*) On or about 10:15 A.M. July 24, 2012, Plaintiff met with Ms. Habiba, Mr. Rocha, and Ms. Tebeau where Plaintiff was informed of his termination. Thereafter, on September 21, 2012, Plaintiff received a right-to-sue letter and filed the instant case asserting retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

## *II. Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to

4

current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

When faced with cross-motions for summary judgment, a reviewing court must consider each motion separately on its own merits "'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Phillip Morris Inc. v. Harshbarger*, 122 F.3d 228, 230 (1st Cir. 1996)). Courts must take care when considering each individual motion to "'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

*III. Analysis*

Plaintiff asserts that Defendant terminated his employment in retaliation for Plaintiff's protected activity, a discrimination suit filed by Plaintiff against his former employer, Becton Dickinson. Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Claims of retaliation are governed by the same proof schemes applicable to Title VII discrimination claims, except that proof of retaliation requires but-for causation. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005); *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 650 (4th Cir. 2002). In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court recently clarified that Title VII does not permit retaliation claims to be proved based on any showing other than but-for causation. 133 S. Ct. 2517, 2528 (2013) (finding no meaningful difference between the texts of the retaliation provision of Title VII and the Age Discrimination in Employment Act ("ADEA") and holding, therefore, that Title VII retaliation claims, like claims brought under ADEA, require but-for causation) (citing *Gross v. FBL Financial Services, Inc.*, 577 U.S. 167, 176 (2009)). Requiring but-for causation, however, is not to say that retaliation claims are only actionable if the employer's retaliatory action was the "so-called 'ultimate employment decision.'" *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (internal citation omitted). Rather, claims of retaliation are actionable so long as "a reasonable employee would have found the challenged action materially adverse," meaning "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 67-68 (citations omitted).

Under the *McDonnell Douglas* methodology, a plaintiff may establish a prima facie case of retaliation by proving three elements: (1) he engaged in a protected activity; (2) his employer acted adversely against him; and (3) a causal connection existed between the protected activity and the asserted adverse action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011); *Thompson*, 312 F.3d at 650. If a prima facie case is shown, the burden shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action. *Hoyle*, 650 F.3d at 337; *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 407 (4th Cir. 2005). If the employer meets this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were in fact a pretext for retaliation. *Hoyle*, 650 F.3d at 337. A plaintiff meets the burden of demonstrating pretext by showing that the employer's proffered explanation is "unworthy of credence" or by offering circumstantial evidence sufficiently probative of the issue of retaliation. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

This case turns on the third element of the *McDonnell Douglas* framework, whether a causal connection existed between the protected activity and the asserted adverse action. There is no dispute that Plaintiff engaged in a protected activity by filing an EEOC complaint against his former employer, Becton Dickinson. Further, Defendant does not dispute that it acted adversely against Plaintiff when it terminated Plaintiff's employment. Additionally, the Court notes that Plaintiff also has asserted that Defendant's revised IT policy constitutes an adverse employment action, which Defendant disputes.[4] The Court, however, need not resolve this

---

[4] Plaintiff's motion asserts that Defendant's revised IT policy constitutes an adverse employment action because it was implemented in response to Defendant's allegedly intercepting Plaintiff's electronic communication. (Pl.'s Reply 7-8, ECF No. 34.) Defendant disputes that its revised IT policy qualifies as an adverse employment action within the meaning of the Supreme Court's decision in *Burlington Northern*. *See* 548 U.S. at 67 (holding claims of retaliation are actionable so long as a reasonable employee would have found the challenged action "materially adverse," meaning "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'") (internal citations omitted). (Def's Opp'n Reply 4-6, ECF No. 32.)

dispute because, as will be discussed, consideration of the third element of a prima facie case, causation, will require the same proof for either asserted adverse employment action.

For purposes of demonstrating a prima facie case, a causal nexus exists where the employer takes the adverse action "shortly after learning of the protected activity." *Price*, 380 F.3d at 213. Here, Plaintiff was terminated approximately three months after Defendant's alleged discovery of the protected activity. This time interval is within the approximate range of a prima facie showing of causation. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (finding a four-month period satisfied the causal nexus for a prima facie case of retaliation); *see also, e.g., Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 588-89 (D. Md. 2012) (finding a two-month interval sufficed to establish causation for a prima facie case of retaliation). Additionally, Defendant's revised IT Policy, implemented two days after the alleged interception of Plaintiff's protected activity, likewise is within the range of a prima facie showing of casusation. The causal element of a prima facie case, however, cannot be established without evidence showing that the employer *knew* of the protected activity. *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (holding that "[k]nowledge of a charge is essential to a retaliation claim") (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (finding "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case")). Here, both asserted adverse employment actions require proof that Defendant *knew* of Plaintiff's protected activity, the EEOC complaint within Plaintiff's failed email communication.

As to causation, Plaintiff alleges that Defendant's MIS division intercepted his failed email communication and, thereby, discovered Plaintiff's protected activity. Yet, no evidence whatsoever in the record indicates that Defendant's MIS department ever possessed an electronic

communication intercepted from Plaintiff's computer. Rather, Plaintiff relies solely on two assertions of circumstantial evidence in support of his contention that Defendant intercepted his email communication. First, Plaintiff asserts that because Defendant's revised IT Policy was implemented two days after Plaintiff's failed email attempt, it must have been the result of Defendant's intercepting Plaintiff's email. (Pl.'s Am. Cross-Mot. Summ. J., Ex. 3, Aff. Enoch ¶ 2, ECF No. 27-3.) Second, Plaintiff asserts that following his failed email communication, his supervisor, Ms. Habiba, made general comments about racial and national origin complaints at weekly department meetings. (*Id.*, Aff. Enoch ¶ 7.) These facts alone, even viewed in the light most favorable to Plaintiff, are insufficient to demonstrate that Defendant's MIS department ever intercepted or possessed an electronic communication from Plaintiff's computer. In short, a reasonable jury cannot infer from these two bits of evidence that Defendant knew of Plaintiff's protected activity when Defendant took either action of publishing a revised IT policy or terminating Plaintiff. Although Plaintiff is a pro se litigant, his burden at this stage is more rigorous than that faced by one opposing a motion to dismiss on the pleadings. Plaintiff has shown, at most, the "mere existence of a scintilla of evidence in support of [his] position," which is insufficient to defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Accordingly, Plaintiff has failed to establish the causal element of a prima facie case of retaliation, and summary judgment in favor of Defendant is appropriate.

## *IV. Conclusion*

For the foregoing reasons, Defendant has established its entitlement to summary judgment. A separate order will issue.

DATED this  10  day of January, 2014.

BY THE COURT:

*James K. Bredar* (signature)

James K. Bredar
United States District Judge